UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| B.K., a minor, through Greg Kroupa, her guardian ad litem, | ) | CIV. 12-4046-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER A. NIELSEN, individually and in his official capacity as Assistant Director of 4-H Youth Development; | ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| ROD GEPPERT, individually and in his official capacity as Brule County Extension 4-H representative; | ) | |
| JOHN DOES, of the South Dakota 4-H Livestock Ethics Committee unidentified in any communication from the other Defendants or in the 2011 South Dakota 4-H Division Handbook of the South Dakota Cooperative Extension Service in their individual and official capacities; and | ) | |
| MARY DOES, of the South Dakota 4-H Livestock Ethics Committee unidentified in any communication from the other Defendants or in the 2011 South Dakota 4-H Division Handbook of the South Dakota Cooperative Extension Service in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Peter Nielsen and Rod Geppert move for summary judgment on the remaining claims against them. Plaintiff, B.K., through her father and guardian ad litem Greg Kroupa, resists that motion. For the reasons below, the court grants in part and denies in part the motion for summary judgment.

## BACKGROUND

The facts, viewed in the light most favorable to B.K., the nonmoving party, are as follows:

B.K. is a high school student who lives with her family in Brule County, South Dakota. B.K. has participated in 4-H since she was eight years old and has won substantial monetary awards in various competitions.[1] Greg owns and operates a farm and livestock breeding business, and all four of Greg's children have participated in 4-H. Nielsen is the Assistant Director of 4-H Youth Development. In 2011, Geppert was the 4-H Livestock Project Leader, and he is currently the Extension Field Specialist I-4-H Livestock Show Manager.

The South Dakota 4-H program requires that all animals exhibited must be in the possession of the exhibitor by the enrollment date for each competition season. The enrollment date for the 2011 season was June 1,

---

[1] 4-H is a national organization with a wide variety of youth programming. The South Dakota 4-H program is run by the South Dakota State University Extension Service at the direction of the Board of Regents. 4-H is open to all youth between the ages of eight and eighteen. In 2011, South Dakota had over 8,000 enrolled members, and Brule County had 63 enrolled members.

2011. Additionally, the South Dakota 4-H code of ethics requires each participant to affirm that he or she has owned and cared for each project animal throughout the season.

On August 11, 2011, B.K. entered Moe, a crossbred belted barrow swine, in the 4-H Achievement Days at the Brule County Fair. She qualified to compete with Moe at the South Dakota State Fair, which was held from September 1, 2011, to September 6, 2011. At the state fair, B.K. won a reserve champion award with Moe and received $500 plus the market value of Moe's carcass. Because the state fair is a terminal event, Moe was sent directly to slaughter from the fair.

Following the state fair, other 4-H members claimed that B.K. showed a different swine at the state fair than she had shown at the Brule County Fair. Those members claimed B.K.'s state fair entry was actually a swine previously owned by Parker Henley for which Mr. Henley had won an award at the Missouri State Fair on August 13, 2011. According to the allegations, Henley sold his swine to Jeff Grings, who sold the swine to Greg Kroupa, and B.K. entered and won the South Dakota state fair with the imposter swine rather than her original swine.

As the cheating allegations against B.K. mounted, B.K. received harassing text messages, e-mails, and Facebook posts. To stem the allegations, B.K. deleted her Facebook account and reported the messages to her parents. B.K.'s parents contacted 4-H in an effort to stop the harassment.

3

On September 8, 2011, the 4-H Livestock Ethics Committee met to discuss the allegations surrounding B.K.'s swine. Nielsen and Geppert were both at the meeting. The next day, Greg met with Geppert about the allegations of cheating and the harassment. Nielsen and Geppert both contend that Greg admitted B.K. had not owned or cared for B.K.'s entry in the state fair. Greg denies making any such admission.

The livestock ethics committee met again on September 20, 2011. At that meeting, the committee determined that B.K. misrepresented the ownership of her winning swine at the state fair in violation of 4-H's rules and ethics. B.K. was not given a chance to present any evidence or argument at this meeting—in fact, B.K. was not even informed of the meeting. The committee decided to permanently ban B.K. from showing livestock at 4-H exhibitions. The committee sent B.K. a letter on October 3, 2011, which stated:

> This letter is to inform you that you will no longer be allowed to participate in South Dakota 4-H exhibition programs. . . . After being shown pictures on September 9, 2011, your father, Mr. Greg Kroupa, admitted to Mr. Rod Geppert and then, to Mr. Peter Nielsen that you have not owned or cared for your recent swine entry for the project season. He also admitted that your swine entry had been submitted and competed in this year's Missouri State Fair. The South Dakota 4-H Livestock Ethics Committee met on September 20, 2011 and concluded that you misrepresented the ownership of this animal and violated the code of ethics.
>
> Based on the events surrounding the misrepresentation of ownership of your Reserve Champion Overall 4-H Market Swine Entry, the State 4-H Office has permanently removed you from the South Dakota 4-H exhibition program and any future

> eligibility or participation in such programs. In addition, you are
> ineligible to receive any awards or premium monies from the 4-
> H Swine Project or 4-H Beef Project areas of the 2011 South
> Dakota State Fair. The South Dakota 4-H program takes the
> Behavioral Expectations and Code of Conduct . . . very seriously
> and does not take this action lightly.

Docket 25-1. After receiving the letter, Greg traveled to Brookings, South

Dakota, to request an appeal of the committee's decision, but Nielsen told

him that no appeal was available.

Subsequently, B.K. filed this suit, alleging various constitutional

violations and seeking both monetary and injunctive relief. The court

dismissed 4-H as an entity defendant and dismissed the damages claims

against Nielsen and Geppert in their official capacities. The court granted

B.K.'s request for a preliminary injunction, which was affirmed by the

Eighth Circuit Court of Appeals.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the movant "shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must

present admissible evidence that there is no dispute of material fact or show

that the nonmoving party has not presented evidence to support an element

of the case on which it bears the ultimate burden of proof. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). "The nonmoving

party may not 'rest on mere allegations or denials, but must demonstrate on

the record the existence of specific facts which create a genuine issue for

trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is not appropriate if there is a dispute about a material fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

At oral argument on the motion for summary judgment, counsel for B.K. clarified that B.K. is only pursuing her claims based on her First Amendment right to association and Fourteenth Amendment right to procedural due process. B.K. requests monetary relief from Nielsen and Geppert in their individual capacities, and she also seeks injunctive relief against Nielsen and Geppert in both their individual and official capacities.

## I.    Monetary Relief

Nielsen and Geppert argue that the doctrine of qualified immunity shields them from any personal liability for monetary relief.[2] "Qualified immunity shields federal and state officials from money damages unless a

---

[2] In deciding the motion to dismiss, the court determined that Nielsen and Geppert were state employees and were therefore entitled to sovereign immunity with respect to B.K.'s claim for monetary damages against them in their official capacities. *Kroupa v. 4-H*, 877 F. Supp. 2d 804, 813-14 (D.S.D. 2012).

plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) ("Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' ") (quoting *Harlow*, 457 U.S. at 818). " 'Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff[s], however, must demonstrate that the law is clearly established.' " *Harrington v. City of Council Bluffs*, 678 F.3d 676, 679 (8th Cir. 2012) (quoting *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)). The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (receding from the mandatory two-step sequence imposed by *Saucier v. Katz*, 533 U.S. 194 (2001)).

### A. Fourteenth Amendment Right to Procedural Due Process

#### 1. Does Procedural Due Process Apply to 4-H Participation

B.K. asserts that her right to due process was violated when the livestock ethics committee deprived B.K. of her interest in her reputation for honesty and integrity when she was publicly banned from government-

sponsored 4-H activities for cheating. Nielsen and Geppert contend that B.K. had no protected interest, and even if she did, the contours of the law were not clearly established at the time of the livestock ethics committee's decision.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"To establish a procedural due process violation, a plaintiff must demonstrate that [s]he has a protected property or liberty interest at stake and that [s]he was deprived of that interest without due process of law." *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). The only issue at dispute here is whether B.K. was deprived of a "liberty" or "property" interest within the meaning of the Due Process Clause of the Fourteenth Amendment.

The Eighth Circuit Court of Appeals recognized that "participation in a state-sponsored 4-H organization and its livestock competitions is a sufficient 'right or status' under state law to be protected by the Due Process Clause." *Kroupa v. Nielsen*, 731 F.3d 813, 819 (8th Cir. 2013). The "right or status" arises from a participant's "interests in protecting [their] reputation for honesty, [their] immediate interest in training livestock and competing for cash prizes and awards, and [their] future economic interest in a career in agriculture." *Id.* at 820. Thus, B.K. has established that procedural due process applies to 4-H participation.

### 2.  Is the Right Clearly Established

The court turns next to whether B.K.'s right to procedural due process was clearly established at the time of the alleged deprivation. B.K. does not need to provide "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). But the Supreme Court also has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* at 2084. Therefore, B.K. cannot merely assert that her clearly established right was a right to receive due process. Instead, she must show a particular liberty or property interest that is beyond debate and entitles her to due process.

B.K. cites *Paul v. Davis*, 424 U.S. 693 (1976) (holding that an injury to one's reputation alone is not sufficient to assert a due process interest, but that defamation or stigma stemming from a government action such as

9

employment termination or school suspension can invoke due process rights), *Mercer v. City of Cedar Rapids*, 308 F.3d 840 (8th Cir. 2002) (explaining that an employee can be entitled to due process when accused of dishonesty, immorality, criminality, or racism due to the stigma of those accusations), and *Marchand v. Grant Cnty.*, No. CV-07-182-RHW, 2009 WL 2998184 (E.D. Wash. Sept. 15, 2009) (finding a possible liberty interest in attending a county fair), for the proposition that the denial of a state benefit such as 4-H livestock exhibition participation, coupled with allegations of dishonesty or cheating and the associated harm to her reputation, constitute a liberty interest sufficient to invoke procedural due process. B.K. also points out that Nielsen and Geppert recognized B.K.'s right to a hearing in various notes from a meeting on September 8, 2011. *See* Docket 69 at 11.

Nielsen and Geppert argue that the most analogous cases are those holding that students do not have a liberty or property interest in participation in school sports. *See* Docket 55 at 7-8 (collecting cases). Based on those cases, Nielsen and Geppert contend that B.K. has no liberty or property interest in 4-H competition, even if she has the possibility of earning income in the future. Additionally, they state that her reputation is not a protected property interest.

Prior to the Eighth Circuit Court of Appeals decision in *Kroupa*, the Eighth Circuit had not addressed the issue of whether a 4-H participant had a protected liberty or property interest in continued participation in 4-H. And while both this court and the Eighth Circuit Court of Appeals found a

10

protected liberty or property interest, the complexity of those opinions demonstrates that the law was not settled. A reasonable official in the position of Nielsen or Geppert in September 2011 could not be expected to predict the evolution of the law or to know beyond debate that B.K. was entitled to due process. Accordingly, even if B.K. can show a violation of her right to procedural due process, that right was not clearly established at the time of the challenged action, and Nielsen and Geppert are entitled to summary judgment based on qualified immunity with respect to B.K.'s procedural due process claim for monetary relief.

## B. First Amendment Right to Association

B.K. alleges that she was entitled to associate with her family[3] without interference from the state or state actors, and Nielsen and Geppert infringed on that right because they deprived her of a benefit, at least in part, "based on the repetitive nature of this incident with [B.K.'s] family." Docket 67 at 8 (Nielsen Depo. 29:5-10); *see also* Docket 69 at 12-13.

---

[3] Subheading B(2)(b) in B.K.'s brief in opposition to summary judgment states that "B.K. has . . . a privilege . . . under the first amendment to associate with the 4-H Livestock Exhibition Program . . . ." Docket 69 at 12. The rest of B.K.'s argument makes clear that, in contrast to the subsection's title, B.K.'s First Amendment claim is based on her relationship with her father, not her right to associate with other members of 4-H. To the extent that B.K. is asserting a violation of her right to associate with other 4-H members, that relationship does not meet the criteria for an intimate relationship and therefore is not entitled to protection. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 620-21 (1984) (finding that the Jaycees was not an intimate group due to its large number of members and the fact that the group was open to new members on a unselective basis).

The Constitution protects an individual's freedom of association to
both intimate association and expressive association. *Roberts v. U.S.
Jaycees*, 468 U.S. 609, 617-18 (1984). Freedom of intimate association
requires that "choices to enter into and maintain certain intimate human
relationships must be secured against undue intrusion by the State because
of the role of such relationships in safeguarding the individual freedom that
is central to our constitutional scheme." *Id.* Freedom of expressive
association, on the other hand, is "a right to associate for the purpose of
engaging in those activities protected by the First Amendment—speech,
assembly, petition for the redress of grievances, and the exercise of religion."
*Id.* at 618.

Whether a relationship or association is intimate enough to trigger
constitutional protection "entails a careful assessment of where that
relationship's objective characteristics locate it on a spectrum from the most
intimate to the most attenuated of personal attachments." *Id.* at 620.
Intimate associations are distinguished by "such attributes as relative
smallness, a high degree of selectivity in decisions to begin and maintain the
affiliation, and seclusion from others in critical aspects of the relationship."
*Id.* Marital and nuclear family relationships are "an intrinsic element of
personal liberty" and are protected by the First Amendment. *Id.* at 619-20.
Although the freedom to form intimate relationships enjoys constitutional
protection, it is not an absolute right, and "even a significant interference
with an individual's freedom of association may be sustained if there exists

12

a sufficiently important state interest, and the means employed are narrowly drawn to avoid unnecessary abridgement of associational freedoms." *Wingate v. Gage County Sch. Dist., No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008) (citing *Norbeck v. Davenport Cmty. Sch. Dist.*, 545 F.2d 63, 67 (8th Cir. 1976)).

" 'A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship.' " *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (quoting *Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998) *vacated on other grounds by Singleton v. Cecil*, 176 F.3d 419 (8th Cir. 1999) (en banc)). Similarly, in a case alleging denial of state employment based on an intimate relationship, the Eighth Circuit Court of Appeals held that the plaintiff was required to produce some "evidence proving that [the] relationship . . . was a substantial and motivating factor" in the challenged action. *Wingate*, 528 F.3d at 1082 (affirming the grant of summary judgment).

Even if B.K. could establish that her nuclear family qualifies as an intimate relationship and that Nielsen and Geppert acted with the requisite intent to interfere with a protected relationship, B.K. has not shown that a reasonable official would have known, based on clearly established law, that banning B.K. from 4-H would constitute state interference with that protected relationship. The court is unable to conclude that every reasonable official would have understood, at that time, that such action

would violate a constitutional right. *See al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' "). Therefore, B.K. has not shown that her First Amendment right was so clearly established that any reasonable official would have known the challenged actions were unlawful. Accordingly, Nielsen and Geppert are entitled to summary judgment based on qualified immunity with respect to B.K.'s claims for monetary damages alleging a violation of her First Amendment right to familial association.

## II.    Injunctive Relief

B.K. seeks injunctive relief against Nielsen and Geppert in both their individual and official capacities based on her First Amendment right to association and her Fourteenth Amendment right to procedural due process.

Nielsen and Geppert contend that qualified immunity relieves them of all liability—even for prospective injunctive relief. Nielsen and Geppert have not provided any authority to support their position.

### A.  Official Capacity Claims

"*Ex parte Young* [209 U.S. 123 (1908)] and its progeny teach that a private party may seek prospective injunctive relief in federal court against a state official, even if the state is otherwise protected by Eleventh

14

Amendment immunity." *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("[S]tate officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment . . . ."); *Hopkins v. Saunders*, 199 F.3d 968, (8th Cir. 1999) ("Qualified immunity insulates a defendant from all claims for legal damages, but it does not shield a defendant from claims for equitable relief); *Pace v. Moriarty*, 83 F.3d 261, 263 (8th Cir. 1996) (citing *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994)) ("[Q]ualified immunity does not shield the officials from Pace's claim for reinstatement or other equitable remedies."); *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989) quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[T]he Eleventh Amendment bars suits by private parties 'seeking to impose a liability which must be paid from public funds in the state treasury,' [but] courts may order injunctions to prevent or to remedy a state officer's conduct.") B.K's requested injunctive relief against Nielsen and Geppert in their official capacities is an equitable remedy, and Nielsen and Geppert have provided the court with no reason why the above cases should not control.[4]

---

[4] Nielsen and Geppert contend that B.K. must also prove that the constitutional right was clearly established to succeed on her claims seeking injunctive relief. They cite no cases to support this contention. While showing that a right is clearly established is necessary to obtain monetary damages, no

To succeed on her First Amendment right to association argument, B.K. must show undue state intrusion into a protected relationship. *Roberts*, 468 U.S. at 617-18. B.K. also must show that Nielsen and Geppert intended to interfere with a protected relationship. *See Reasonover*, 447 F.3d at 585. B.K. introduced evidence that the livestock ethics committee's decision was motivated by her relationship to her father. The committee's motivation or intent is a factual question. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ("[I]t was error in this case for the District Court to resolve the disputed fact of motivation at the summary judgment stage."). A jury could reasonably find that Nielsen and Geppert intentionally interfered with B.K.'s protected right to associate with her nuclear family. Because this is a genuine dispute of material fact, the court denies summary judgment with respect to B.K.'s First Amendment freedom of association claim against Nielsen and Geppert for injunctive relief in their official capacities.

To succeed on her Fourteenth Amendment procedural due process argument, B.K. must show that she had a protected interest entitling her to some process, and that she did not receive that process. *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999). The Eighth Circuit Court of

---

such showing is necessary on a claim for prospective or declaratory relief. *See, e.g., Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 669 (8th Cir. 1992) (court found officers' conduct may have constituted a taking under the Fifth Amendment and denied summary judgment to officers on plaintiff's claim for prospective injunctive relief but granted summary judgment to officers on plaintiff's claim for damages because the right was not clearly established when deprivation occurred).

16

Appeals has recognized that participation in 4-H and its livestock competitions is a sufficient "right or status" under state law to be protected by the Due Process Clause and that B.K. was entitled to due process protections before her right to participate could be terminated. *Kroupa*, 731 F.3d at 820. Nielsen and Geppert have not presented undisputed facts to support a judgment in their favor. Therefore, the court denies Nielsen and Geppert's motion for summary judgment with respect to B.K.'s Fourteenth Amendment procedural due process claim for injunctive relief in their official capacities.

### B.  Individual Capacity Claims

It is unclear whether B.K. is still pursuing injunctive relief against Nielsen and Geppert in their individual capacities. The parties do not address this issue in their pleadings or briefs. B.K. has not alleged any actions taken by Nielsen or Geppert in their individual capacities, and she has failed to set forth specific facts showing there is a genuine issue for trial with regard to injunctive relief from Nielsen and Geppert in their individual capacities. *See Cantrell v. Beebe*, No. 2:09cv00184 BSM/HLJ, 2010 WL 2232221, at *1 (E.D. Ark. June 2, 2010) ("Additionally, Cantrell has failed to state a claim for injunctive relief against Beebe and Cantrell [sic] in their individual capacities because he fails to allege any specific actions taken by Beebe and McDaniel in their individual capacities."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (requiring a party resisting summary judgment to introduce specific facts that show a genuine issue for

trial). Furthermore, any injunctive relief granted would be ordered against Nielsen and Geppert in their official capacities. Therefore, Nielsen and Geppert are entitled to summary judgment with respect to B.K.'s request for injunctive relief against them in their individual capacities.

**CONCLUSION**

Nielsen and Geppert are entitled to qualified immunity with respect to B.K.'s claims for monetary relief. B.K. has failed to carry her burden of proof that her right to association was clearly established and that her right to procedural due process was clearly established. Therefore, Nielsen and Geppert are entitled to summary judgment on those claims. Nielsen and Geppert, however, are not entitled to qualified immunity with respect to B.K.'s claims for injunctive relief in their official capacities. B.K. has failed to show a genuine issue for trial with respect to her requested injunctive relief against Nielsen and Geppert in their individual capacities.

Accordingly, it is

ORDERED that Nielsen and Geppert's motion for summary judgment is granted with respect to B.K.'s claims against them in their individual capacities for monetary relief based on violations of her First and Fourteenth Amendment rights.

IT IS FURTHER ORDERED that Nielsen and Geppert's motion for summary judgment is granted with respect to B.K.'s claims for injunctive relief against them in their individual capacities.

IT IS FURTHER ORDERED that Nielsen and Geppert's motion for summary judgment is denied with respect to B.K.'s claims against them in their official capacities for injunctive relief based on violations of her First and Fourteenth Amendment rights.

Dated December 18, 2013.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

19